IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-00754-CNS-NRN

MARY JOANNE DEZIEL TIMMINS,

    Plaintiff,

v.

JOHN KEISS HENDERSON,
ALEX PLOTKIN, in his individual capacity,
JEFFREY BAKER, in his individual capacity,
KAREN MORGAN, in her individual capacity, and
GREEN MOUNTAIN WATER AND SANITATION DISTRICT, a municipal corporation,

    Defendants.

---

## ORDER

---

Before the Court are Defendant John Keiss Henderson's Partial Motion to Dismiss (ECF No. 27); Defendants Alex Plotkin, Jeffrey Baker, Karen Morgan, and Green Mountain Water and Sanitation District's (collectively the "District Defendants'") Motion to Dismiss (ECF No. 28); and Mr. Henderson's Motion for Joinder (ECF No. 30). For the reasons set forth below, the Court GRANTS Mr. Henderson's Motion to Dismiss (ECF No. 27), GRANTS the District Defendants' Motion to Dismiss (ECF No. 28), and DENIES Defendant Henderson's joinder motion as moot (ECF No. 30).

1

# I. BACKGROUND[1]

Ms. Timmins is an attorney and active member of the Colorado bar, and was employed as Green Mountain Water and Sanitation District's (the "District's") general counsel from February 2019 through August 2021 (ECF No. 1 at 3 ¶ 9). In May 2018, the District's Board of Directors voted to authorize the District to enter into an "Intergovernmental Agreement for Extra-Territorial Sewer Service" (the "Big Sky IGA") with Big Sky Metropolitan District ("Big Sky") (*Id.* at 6 ¶ 17). Defendants Plotkin, Baker, and Adrienne Hanagan were elected to the District's Board of Directors in May 2018 (*Id.* at 6 ¶ 18). In February 2019, Defendants Plotkin and Baker voted to "formalize" an agreement with Defendant Henderson, under which Defendant Henderson was retained as a legal consultant for the District (*Id.* at 6-7 ¶ 24). Defendant Henderson provided advice on the District's "legal matters," including any litigation related to the Big Sky IGA and its potential termination (*Id.*). Ms. Timmins alleges that Defendant Henderson was providing legal services to the District in violation of state law, given that he was simultaneously employed by the Public Defender's Office of Colorado (*Id.* at 5, 8 ¶¶ 15, 25).

The District's Board of Directors hired Ms. Timmins as the District's general counsel in February 2019 (*Id.* at 8 ¶ 27). In her capacity as the District's general counsel, Ms. Timmins was responsible for responding to the Board's requests for legal advice, which were given in the Board of Directors' "executive session meetings" (*Id.* at 10 ¶ 34). Her duties as general counsel included preparing and filing pleadings, discovery responses and other documents as needed, and meeting with the Board of Directors during executive session meetings regarding legal issues and strategy

---

[1] The background facts are taken from the well-pleaded allegations in Ms. Timmins' Complaint. *See Porter v. Ford Motor Co.*, 917 F.3d 1246, 1248 n.1 (10th Cir. 2019).

for the District (*Id.*). Shortly after being hired, Defendants Plotkin and Baker introduced Ms. Timmins to Defendant Henderson, and explained that he would be available to provide "assistance on any legal matters relating to the Big Sky IGA," including litigation related to its termination (*Id.* at 10 ¶ 35). In April 2019, the Board of Directors voted to terminate the Big Sky IGA during a public meeting of the District (*Id.* at 11 ¶ 36). Defendant Henderson drafted the termination resolution (*Id.*).

In May 2019, the Green Tree Metropolitan District filed a Complaint against the District, asserting claims under the Colorado Open Records Act ("CORA") (*Id.* at 11 ¶ 37). In response to the Green Tree Metropolitan District's CORA action, Ms. Timmins provided the Board of Directors with legal advice related to the action, which included advice that all members of the District's Board of Directors must preserve relevant e-mails for production in the CORA action (*Id.* at 11 ¶ 39). In the process of gathering documents from Defendant Henderson related to the CORA action, Ms. Timmins discovered that Defendant Henderson was employed as a deputy public defender (*Id.* at 11-12 ¶ 40). In June 2019, Big Sky sued the District for its termination of the Big Sky IGA (*Id.* at 12 ¶ 41). During "an executive session at a Regular Meeting" that same month, Ms. Timmins advised the Board of Directors that any e-mail communications on their personal servers needed to be preserved due to the CORA action and the Big Sky litigation (*Id.* at 12 ¶ 42). At a later Board meeting, Ms. Timmins advised the Board of Directors that Defendant Henderson could not, under Colorado law, act as the District's legal advisor while he served as a deputy public defender (*Id.* at 12 ¶ 43). Defendant Henderson's role at the District could also result in a waiver of the District's privileged information, Ms. Timmins cautioned, and advised that

3

Defendant Henderson had various conflicts of interest as the District's legal advisor (*See id.* at 12-13 ¶¶ 43-44).

Throughout 2019 and 2020, Ms. Timmins advised the District's Board of Directors that communications with Defendant Henderson or each other outside of public meetings violated the Colorado Open Meetings Act, and reiterated that communications with Defendant Henderson about the Big Sky litigation could result in the waiver of the District's attorney-client privilege (*Id.* at 13 ¶ 45). From 2019 through early 2021, Defendant Henderson "regularly" met with Defendants Plotkin, Morgan, and Baker to discuss the District's legal matters "outside of public meetings" and without Ms. Timmins' knowledge (*Id.* at 14 ¶ 46).

By the summer of 2019, six lawsuits had been filed against the District based on its termination of the Big Sky IGA (*Id.* at 14 ¶ 47). As these lawsuits progressed, Ms. Timmins eventually learned that Defendants Henderson, Plotkin, Morgan, and Baker were discussing privileged matters and providing Defendant Henderson with Ms. Timmins' own work product, as well as that Defendants Henderson, Plotkin, Morgan, and Baker sought to use litigation related to the Big Sky IGA for "improper personal motives" (*Id.* at 14-15 ¶¶ 48, 50). In Fall 2020, Ms. Timmins hired Scott Gessler as co-counsel in litigation based on the Big Sky IGA (*Id.* at 16 ¶ 52). During a deposition in November 2020—which Mr. Gessler defended—Defendant Plotkin admitted to communicating with Defendant Henderson on a personal e-mail server, and destroying relevant public records that included messages from Defendant Henderson regarding the Big Sky IGA litigation (*Id.* at 16 ¶ 53). Defendant Baker made similar admissions in his December 2020 deposition (*Id.* at 17 ¶ 54).

In a "Regular Meeting" of the District in January 2021, Defendants Plotkin, Morgan, and Baker sought to remove Ms. Hanagan as the Board of Director's President by amending the District's bylaws, based on her statements at public meetings that Defendants Plotkin, Morgan, and Baker were illegally seeking Defendant Henderson's advice (*Id.* at 18 ¶¶ 58-60).

After Defendants Plotkin, Morgan, and Baker continued to disregard Ms. Timmins' legal advice, Ms. Timmins decided to make statements "outside her chain of command" concerning Defendants Plotkin, Morgan, and Baker's illegal conduct and how their behavior posed "dangers and risks" to the District's citizens, including the possible $140,000,000 cost of losing suits related to the Big Sky IGA's termination (*Id.* at 19 ¶ 61). At a Regular Meeting held in January 2021, Ms. Timmins announced to the public that Defendant Plotkin's passage of new District bylaws that had not been reviewed by the public violated the Colorado Open Meetings Law (*Id* at 19-20 ¶ 62).

Defendants Plotkin, Morgan, and Baker ultimately hired Defendant Henderson as an attorney for the District in the Bky Sky IGA litigation; in December 2020 and January 2021, the Jefferson County District Court ruled that Defendant Henderson was legally prohibited from representing the District, and ordered all communications between Defendants Henderson, Plotkin, Morgan, and Baker be turned over in the Big Sky IGA litigation (*Id.* at 20-21 ¶¶ 63, 64). Defendants Henderson, Plotkin, and Morgan later asked Mr. Gessler to prepare certain proposals and legal analysis outside of a public meeting in violation of the Colorado Open Meetings Act (*Id.* at 21 ¶ 67).

Exasperated by Defendants' conduct, Ms. Timmins stated to the public in April 2021 during a "Regular Meeting" that Defendants Plotkin and Baker had improperly destroyed evidence, and that their conduct exposed the District to legal consequences (*Id.* at 22 ¶ 69). Ms.

Timmins made similar statements regarding Defendants' misconduct in several other public meetings (*See, e.g., id.* at 22-23 ¶¶ 70-72). After making her statements regarding Defendants' misconduct in April 2021, Ms. Timmins was contacted by a reporter at the "Jeffco Transcript newspaper" (*Id.* at 23 ¶ 73). Ms. Timmins exchanged emails with the reporter regarding the District Defendants' alleged "corruption" (*Id.*).

Defendants Plotkin, Morgan, and Baker began retaliating against Ms. Timmins for the statements she made during public meetings and disparaging her reputation (*See, e.g., id.* at 24 ¶ 77). For example, in a February 2021 meeting, Defendant Plotkin made a motion "that the District not pay [Ms.] Timmins" for her work performed while representing the District in the Big Sky IGA litigation (*Id.* at 25 ¶ 78). Ultimately, Defendant Henderson began "conspiring" with Defendants Plotkin, Morgan, and Baker to fire Ms. Timmins (*Id.* at 27-28 ¶ 88). Defendant Henderson also created a blog called "The Rooney Valley News," and used the blog to publish matters related to the District's legal affairs, as well as several false and disparaging remarks about Ms. Timmins (*See, e.g., id.* at 28, 30 ¶¶ 89-90, 95). In August 2021, Ms. Timmins was terminated (*See id.* at 27 ¶ 86). Ms. Timmins alleges that Defendants Henderson, Plotkin, Baker, and Morgan formed a conspiracy to retaliate against her and publish defamatory statements on "The Rooney Valley News" (*See, e.g., id.* at 44 ¶ 122).

Ms. Timmins filed her Complaint in March 2022, bringing state law claims for defamation and intentional interference with contract against Defendant Henderson, one claim under 42 U.S.C. § 1983 against Defendants Plotkin, Morgan, and Baker for violating Ms. Timmins' First Amendment rights, one claim under § 1983 against the District for violating Ms. Timmins' First Amendment rights, and one claim for conspiracy under § 1983 against all Defendants (*See* ECF

No. 1 at 45-52). Defendant Henderson and the District Defendants filed separate motions to dismiss Ms. Timmins' Complaint in May 2022 (ECF Nos. 27-28). In June 2022, Defendant Henderson filed a Special Motion to Dismiss Pursuant to C.R.S. § 13-20-1101 (ECF No. 45). The Motions are fully briefed.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations are read in "the context of the entire complaint." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022) (quotation omitted). To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *See, e.g.*, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

### III. ANALYSIS

Having considered the District Defendants' Motion to Dismiss, Defendant Henderson's Motion to Dismiss, Ms. Timmins' Complaint, and the relevant legal authority, the Court grants the District Defendants' Motion to Dismiss and Defendant Henderson's Motion to Dismiss, and denies Defendant Henderson's joinder motion as moot. The Court considers the Defendants' motions in turn.

**A. The District Defendants' Motion to Dismiss**

The District Defendants argue that Ms. Timmins' First Amendment claims fail because the speech for which she suffered alleged retaliation was made pursuant to her official duties as the District's legal counsel (*See* ECF No. 28 at 3-6). Ms. Timmins contends that her speech was protected under the First Amendment and not made pursuant to her official duties (*See* ECF No. 42 at 9). The Court agrees with the District Defendants.

The parties agree that in assessing Ms. Timmins' First Amendment retaliation claims the *Garcetti-Pickering* framework governs (*See* ECF Nos. 28 at 4, 42 at 9). Under this framework, the Court must first determine whether an employee speaks "pursuant to [their] official duties." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007) (quotation omitted and alteration added).[2] If an employee speaks "pursuant to [their] official duties," then the speech is not constitutionally protected. *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006)).

---

[2] The *Garcetti-Pickering* framework involves a "five step inquiry." *Brammer-Hoetler*, 492 F.3d at 1202. First, courts determine whether an employee speaks pursuant to their official duties. *Id.* If an employee does not, courts proceed to the second step, which considers whether the alleged speech is a "matter of public concern." *Id.* (citation omitted). Third, if the employee speaks as a citizen on a matter of public concern, courts balance the employee's interest in the speech against the employer's interests. *Id.* at 1203 (quotation omitted). Fourth, assuming the employee's interests outweigh their employer's interests, the employee must show their speech was a "substantial factor or motivating

There are no "bright line rules" in determining whether an employee's speech survives *Garcetti*'s first step; instead, courts must take a "practical view" of all the facts and circumstances "surrounding the speech and the employment relationship." *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010) (quotations omitted). An employee's speech is made pursuant to their official duties where the alleged speech involves "the type of activities that the employee was paid to do." *Id.* at 713 (quotations omitted). Further, an employee's speech is constitutionally unprotected if it "stemmed from" the type of work an employee was paid to do. *Rohrbough v. Univ. of Colorado Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010) (alterations and quotations omitted). And even if the employee's speech "concerns an unusual aspect of [their] job that is not part of [their] everyday functions," it may nonetheless be unprotected under the First Amendment. *Brammer-Hoelter*, 492 F.3d at 1203.

Essentially, under *Garcetti*'s first step, courts take a "broad view" in assessing employees' speech and whether it was made "pursuant to [the] employee's official duties." *Id.* (quotations omitted). *Garcetti*'s first step regarding an employee's speech and its relationship to their official duties imposes a "heavy barrier" to First Amendment retaliation claims. *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1331 (10th Cir. 2007).

Ms. Timmins alleges that the scope of her duties as the District's legal counsel included responding to "requests for legal advice" from the District's Board of Directors "to be given in executive session meetings," and to "meet in executive session" with the Board of Directors "to discuss legal issues and strategy" (ECF No. 1 at 10 ¶ 34). The speech Ms. Timmins contends is

---

factor" in the employment decision. *Id.* (quotations omitted). Fifth, if the employee's speech is "such a factor," the employer must demonstrate that it would have made the same employment decision "even in the absence" of the employee's speech. *Id.* (quotations omitted).

protected was allegedly made at meetings held by the Board of Directors (*See, e.g.*, ECF No. 1 at 22 ¶ 69). For instance, during a "Regular Meeting" in April 2021, Ms. Timmins "made statements in public" that Defendants Plotkin and Baker had compromised the Big Sky IGA litigation by destroying "evidence in the case in violation of the rules of civil procedure . . . discovery orders . . . and [her] legal advice" (*Id.*). And during a "Special Meeting" of the Board of Directors later that month, Ms. Timmins made "public statements about the $20 million cost" to the District that resulted from Defendants Plotkin, Morgan, and Bakers' "attempt[s] to conceal" the inclusion of certain property developments (*Id.* at 22-23 ¶ 70). In March 2021, Ms. Timmins "stated to the public" at a special meeting that Defendant Henderson improperly represented Defendants Plotkin, Morgan, and Baker (*Id.* at 23 ¶ 71). Ms. Timmins made similar comments about Defendant Henderson "[i]n other meetings held in early 2021" (*Id.* at 23 ¶ 72).

The Court agrees with the District Defendants that this alleged speech is unprotected (*See, e.g.,* ECF No. 28 at 5). The allegations in Ms. Timmins' Complaint situate her speech within the scope of her official duties as the District's general counsel. For example, Ms. Timmins alleges that, in the April 2021 "Regular Meeting," she stated that Defendants Plotkin and Baker compromised the Big Sky IGA litigation by violating various legal rules and court orders as well as her own legal advice (*See* ECF No. 1 at 22 ¶ 69). Although statements regarding the District Defendants' own allegedly improper and illegal conduct may concern an "unusual aspect" of Ms. Timmins' job, *see Brammer-Hoelter*, 492 F.3d at 1203, the statements involved the type of activities Ms. Timmins was paid to do as the District's general counsel—provide the District Defendants with legal advice. *See also Chavez-Rodriguez*, 596 F.3d at 713. Indeed, Ms. Timmins alleges that her job duties included meeting "in executive session with Board members to discuss

10

legal issues and strategy" (ECF No. 1 at 10 ¶ 34). Accordingly, considering Ms. Timmins' employment relationship, and applying—as the Court must—a "broad view" in assessing Ms. Timmins' alleged remarks, her speech stemmed from the work she was hired to do: "discuss *legal issues* and strategies" related to litigation (ECF No. 1 at 10 ¶ 34 (emphasis added)). *See also Brammer-Hoelter*, 492 F.3d at 1203; *Rohrbough*, 596 F.3d at 746. Therefore, Ms. Timmins' speech was made pursuant to her official duties as the District's general counsel. *See Chavez-Rodriguez*, 596 F.3d at 713.[3]

Ms. Timmins argues that the legal authority compelling this conclusion is "contrary" to *Lane v. Franks*, 573 U.S. 228 (2014). *Lane* "overruled" the Tenth Circuit's applications of *Garcetti* because, according to Ms. Timmins, *Lane* held that speech concerning "information acquired by virtue of [the employee's] public employment" does not render that speech unprotected (ECF No. 42 at 13 (quoting *Lane*, 573 U.S. at 240)). Moreover, speech "related to" a public employee's official duties may nonetheless enjoy constitutional protection (*Id.*). Ms. Timmins' reading of *Lane*

---

[3] Ms. Timmins also argues that her reports to the *Jeffco Transcript* news reporter were not made pursuant to her official duties because she was speaking outside the scope of her duties (*See* ECF No. 42 at 12). The Court agrees with Ms. Timmins that the Court considers the context in which her speech was made, including the "audience" for her speech. *Chavez-Rodriguez*, 596 F.3d at 714. But Ms. Timmins fails to allege the content of the speech that she provided to the *Jeffco Transcript*. The Complaint alleges that Bob Wooley, the *Jeffco Transcript* reporter, "contacted" Ms. Timmins, and that she "exchanged emails" with him (ECF No. 1 at 23 ¶ 73). The Complaint does not allege what Ms. Timmins said to Mr. Wooley in those emails. Indeed, Ms. Timmins alleges *what Mr. Wooley said* regarding "information to include in a newspaper article about [the District Defendants'] corruption," and that he wanted to "untangle this mess for [his] readers" (*Id.* (quotations omitted). At most, Ms. Timmins alleges that she "exchanged emails" with Mr. Wooley, but the Complaint does not allege what Ms. Timmins said in the exchanged emails. Nor does Ms. Timmins allegation that news articles regarding the District Defendants appeared in the *Jeffco Transcript* provide the Court with any speech to analyze—even if these news articles contained information "as outlined" by Ms. Timmins in her public statements (ECF No. 1 at 24 ¶ 75). Therefore—based on the allegations as currently pleaded in her Complaint—Ms. Timmins' argument that her speech to the *Jeffco Transcript* was outside the scope of her official job duties is unavailing on the grounds that she has not alleged the content of her speech to Mr. Wooley. *See Rohrbough*, 596 F.3d at 746 ("[T]he Tenth Circuit has taken a case-by-case approach, looking both *to the content of the speech*, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." (emphasis added)). *Cf Lane v. Franks*, 573 U.S. 228, 240 (2014) (emphasizing the "subject matter" of an employee's speech in determining whether it is made pursuant to official job duties). Ms. Timmins may arguably cure this deficiency with an amendment.

is flawed. As a factual matter, *Lane* distinguishably concerned a public employee "who provide[d] truthful sworn testimony, compelled by subpoena." *Lane*, 573 U.S. at 238. The Supreme Court concluded that, against this "factual backdrop," the First Amendment protects "[t]ruthful testimony under oath by a public employee *outside* the scope of his ordinary job duties," even if the testimony "relates to" his public employment. *Id* (emphasis added). But *Lane* reiterated that the "critical question" under *Garcetti* is whether a public employee's speech is "ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Id.* at 240.

Tenth Circuit precedent is wholly consistent with *Lane*. Indeed, the Tenth Circuit has repeatedly emphasized—even in *Lane*'s wake—that courts should examine the "facts and circumstances surrounding the speech" to determine if an employee's speech is "pursuant to [their] official duties." *Ellison v. Roosevelt Cnty. Bd. of Cnty. Commissioners*, 700 F. App'x 823, 828 (10th Cir. 2017) (citing *Chavez-Rodriguez*, 596 F.3d at 713); *see also Flores v. City of Farmington*, No. 21-2021, 2021 WL 5873151, at *4–5 (10th Cir. Dec. 13, 2021). Further, in line with *Lane*'s examination of whether a public employee's speech concerns the employee's duties, the Court is directed to consider the "content of the speech" to determine whether it is protected. *See Rohrbough*, 596 F.3d at 746. *Cf. Lane*, 573 U.S. at 240. And accepting Ms. Timmins' invitation to consider the content of her alleged speech, governing authority compels the conclusion that— even though her speech concerned the District Defendants' allegedly improper conduct—she does not satisfy *Garcetti*'s first prong (*See* ECF No. 41 at 10-11). As the Tenth Circuit has explained, raising concerns about the "legality" of an employer's operations are nonetheless made to pursuant to a public employee's official duties if providing legal advice on the "lawful and proper way" to

12

conduct business is "part of [the employee's] portfolio." *Casey*, 473 F.3d at 1239 (quotations omitted).

To be sure, the Court agrees with Ms. Timmins to the extent that she argues a public employee's speech—even if related to the employee's job duties—may in certain factual contexts enjoy First Amendment protection (*See* ECF No. 42 at 13). And although there are no "bright line rules" used in determining whether a public employee's speech is protected, taking the "broad view" of speech—as the Court must—in this particular case the alleged speech stemmed from and "reasonably contribute[d] to or facilitate[d]" Ms. Timmins' performance of her official duties. *Chavez-Rodriguez*, 596 F.3d at 713 (quotations omitted and alterations added). Accordingly, Ms. Timmins has failed to mount the "heavy barrier" of *Garcetti*'s first step because her speech was made pursuant to her official duties as the District's general counsel. *Casey*, 473 F.3d at 1331. *See also id.* (holding that employee's speech was "more akin to that of a senior executive acting pursuant to official duties than to that of an ordinary citizen speaking on his or her own time.").

\* \* \*

For the reasons set forth above, Ms. Timmins' alleged speech was made pursuant to her official duties. Therefore, the Court need not address *Garcetti*'s remaining steps, or the District Defendants' argument that Defendants Plotkin, Morgan, and Baker are entitled to qualified immunity on Ms. Timmins' § 1983 First Amendment retaliation claims. *See Brammer-Hoelter*, 492 F.3d at 1202 ("If the employee speaks pursuant to his official duties, then there is no constitutional protection . . . ."). Moreover, because Ms. Timmins has failed to meet her burden of showing her speech is constitutionally protected, dismissal of her conspiracy claim is warranted. *See Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1221 (10th Cir. 2017) ("[Plaintiff's] last claim,

conspiracy to violate her First Amendment rights, *necessarily requires* [the plaintiff] to first show a deprivation of her First Amendment rights." (emphasis added)).[4]

### B. Defendant Henderson's Partial Motion to Dismiss

Defendant Henderson moves to dismiss Ms. Timmins' Complaint on the same grounds as the District Defendants: that she has not satisfied *Garcetti* and fails to set forth a plausible conspiracy claim under § 1983 (*See* ECF No. 27 at 9-14, 17-20). As discussed in the Court's analysis of the District Defendants' dismissal motion, because Ms. Timmins has not met her burden at *Garcetti*'s first step, the Court grants Defendant Henderson's Partial Motion to Dismiss for the same reason the Court grants the District Defendants' dismissal motion. As such, Defendant Henderson's motion "join[ing] in the District Defendants' arguments" made in their dismissal motion is denied as moot (ECF No. 30 at 1).

### IV. CONCLUSION

Consistent with the above analysis, the District Defendants' Motion to Dismiss (ECF No. 28) and Defendant Henderson's Motion to Dismiss (ECF No. 27) are GRANTED. Defendant Henderson's Motion for Joinder (ECF No. 30) is DENIED as moot. Accordingly, Ms. Timmins' § 1983 claim against Defendants Plotkin, Morgan, and Baker, her § 1983 claim against the District, and § 1983 conspiracy claim against all Defendants are DISMISSED WITHOUT PREJUDICE.

---

[4] Dismissal of Ms. Timmins' § 1983 claim against Defendant Green Mountain Water and Sanitation District is also warranted because Ms. Timmins has failed to allege that Defendants Plotkin, Morgan, and Baker violated her constitutional rights. *See Crowson v. Washington Cnty. Utah*, 983 F.3d 1166, 1191 (10th Cir. 2020) ("[T]here is no question that where the actions of an [entity's] officers do not rise to the level of a constitutional violation and the claim against the municipality is based on it serving as the driving force behind those actions, liability cannot lie."). The gravamen of Ms. Timmins' § 1983 First Amendment retaliation claim is that officers of Green Mountain Water and Sanitation District adopted and implemented the decision to terminate Ms. Timmins that violated her constitutional rights (ECF No. 1 at 49-50 ¶ 157). Although an entity's liability may attach "even where no individual action . . . rises to a constitutional violation," Ms. Timmins has failed to allege that "the sum of actions nonetheless violates [her] constitutional rights." *Crowson*, 983 F.3d at 1191.

Ms. Timmins may, if she chooses to do so and believes that such amendment will cure the deficiencies noted herein, file an amended complaint within 14 days of this Order.[5]

DATED this 6th day of December 2022.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

---

[5] Defendant Henderson also moves to dismiss Ms. Timmins' state law claims against him under Colorado's anti-SLAPP law (*See* ECF No. 45 at 2). The Court will address Defendant Henderson's anti-SLAPP motion after it has determined whether dismissal with prejudice of Ms. Timmins' claims against the District Defendants is warranted based on Ms. Timmins' amendments, if any.