IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-00754-CNS-NRN

MARY JOANNE DEZIEL TIMMINS,

    Plaintiff,

v.

JOHN KEISS HENDERSON,
ALEX PLOTKIN, in his individual capacity,
JEFFREY BAKER, in his individual capacity,
KAREN MORGAN, in her individual capacity, and
GREEN MOUNTAIN WATER AND SANITATION DISTRICT, a municipal corporation,

    Defendants.

## ORDER

    Before the Court are Defendants Alex Plotkin, Jeffrey Baker, Karen Morgan, and Green Mountain Water and Sanitation District's (collectively the "District Defendants'") Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 74) and Defendant John Kiess Henderson's Renewed Partial Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 75). For the reasons set forth below, the Court GRANTS the District Defendants' Motion (ECF No. 74) and GRANTS Mr. Henderson's Partial Motion to Dismiss (ECF No. 75).

# I. BACKGROUND[1]

The Court summarized the allegations in Ms. Timmins' Complaint in its December 6, 2022, Order (*See* ECF No. 72 at 2-7). Many of the allegations in Ms. Timmins' Amended Complaint are identical to those alleged in her original Complaint. *Compare* ECF No. 1, *with* ECF No. 72. Accordingly, the Court incorporates its summary of the Complaint's allegations into its Order, reciting below the newly added allegations in Ms. Timmins' Amended Complaint.

After Ms. Timmins made public statements at the "Regular Meeting" of the Board in April 2021, she was contacted by Bob Wooley, a reporter for the *Jeffco Transcript* newspaper (ECF No. 73 at 24 ¶ 73(a)). Mr. Wooley asked Ms. Timmins about the Board's recent activity, which he characterized as a "mess" (*id.*). In response, Ms. Timmins made statements to Mr. Wooley regarding Board members' "pattern of open meetings act violations" and their actions that were "against the interests of the District" in ongoing litigation, resulting from their alignment with "an outside attorney who had a conflict of interest" (*id.*).

In April and May 2021, Ms. Timmins attended events at the Denver Press Club where she met Skyler McKinley, a member of the Press Club (*id.* at ¶ 73(b)). Mr. McKinley asked Ms. Timmins about "corruption" at the Board (*id.*). In response, Ms. Timmins made statements to Mr. McKinley about Board members' "open meeting act violations" and how they were "putting the District at grave financial risk by violating [c]ourt orders in ongoing litigation" (*id.*). Based on these conversations, Mr. McKinley contacted a reporter at the *Colorado Sun* newspaper who

---

[1] The background facts are taken from the well-pleaded allegations in Ms. Timmins' Amended Complaint. *See Porter v. Ford Motor Co.*, 917 F.3d 1246, 1248 n.1 (10th Cir. 2019).

subsequently published an article in the *Colorado Sun* about the Board, "including the matters discussed by [Ms.] Timmins with Mr. McKinley" (*id.*).

On "several occasions" between January 2021 and June 2021, Ms. Timmins corresponded with at least four Green Mountain residents concerned about the Board's activity (*id.* at ¶ 73(c)). During these phone calls, Ms. Timmins told residents that the Board was violating open meeting laws and that the Board was putting the District at "grave financial risk by violating [c]ourt orders in ongoing litigation" (*id.*).

All of Ms. Timmins' statements to Mr. Wooley, Mr. McKinley, and the Green Mountain residents were made "outside of public meetings" (*id.* at ¶ 74). As a result of her statements, public opposition to the activities of Defendants Morgan, Plotkin, and Baker increased (*id.*). In May 2021, Green Mountain residents filed "Petitions to Recall" against Defendants Morgan, Plotkin, and Baker, triggering a recall election of Defendants Morgan, Plotkin, and Baker (*id.*). In April 2022, counsel for Defendants Morgan, Plotkin, Baker, and the District filed a complaint against Ms. Timmins with the Colorado Attorney Regulation Counsel, "seeking to have sanctions imposed against [Ms.] Timmins for alleged violations of the Colorado Rules of Professional Conduct" (*id.* at 30-31 ¶ 87). The Regulation Counsel dismissed the complaint due to the lack of any "factual basis" to support its allegations (*id.*).

Ms. Timmins filed her Complaint in this action in March 2022 (ECF No. 1). Defendants moved to dismiss the Complaint on several grounds (*See* ECF Nos. 27, 28, 45). The Court granted Defendants' dismissal motions in December 2022, and granted Ms. Timmins leave to file an Amended Complaint (ECF No. 72 at 14-15). At the time the Court granted Defendants' dismissal motions, the Court deferred ruling on Defendant Henderson's Special Motion to Dismiss until

3

determining whether dismissal with prejudice of Ms. Timmins' claims against the District Defendants was warranted based on "Ms. Timmins' amendments, if any" (ECF No. 72 at 15 n.5). Ms. Timmins filed her Amended Complaint in December 2022 (ECF No. 73). Defendants filed several motions to dismiss the Amended Complaint (*See* ECF Nos. 74, 75, 76). The Court terminated Mr. Henderson's renewed Special Motion to Dismiss, construing his renewed motion as a Notice of Supplemental Authority related to his previously filed Special Motion to Dismiss (ECF Nos. 84, 45). The Motions pending before the Court are fully briefed.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations are read in "the context of the entire complaint." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022) (quotation omitted). To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face. *See, e.g.*, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may

4

proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

### III. ANALYSIS

Having considered the District Defendants' Motion, Defendant Henderson's Partial Motion, Ms. Timmins' Amended Complaint, and the relevant legal authority, the Court grants the District Defendants' Motion and Defendant Henderson's Partial Motion. The Court considers the Defendants' motions in turn.

**A. The District Defendants' Motion to Dismiss**

The parties' arguments regarding the dismissal of Ms. Timmins's First Amendment claims mirror those made in connection to the District Defendants' earlier dismissal motion. The District Defendants argue that Ms. Timmins' First Amendment claims fail because the speech for which she suffered alleged retaliation was made pursuant to her official duties as the District's legal counsel (ECF No. 74 at 4-5; *see also* ECF Nos. 72 at 8, 28 at 3-6). Ms. Timmins contends certain categories of her speech were protected under the First Amendment and not made pursuant to her official duties (*See* ECF No. 79 at 4-7; *see also* ECF Nos. 72 at 8, 49 at 9). The Court agrees with the District Defendants.

The Court set forth the legal standard governing Ms. Timmins' First Amendment claims in its December 6, 2022, Order. *See Timmins v. Henderson*, No. 1:22-cv-00754-CNS-NRN, 2022 WL 17454551, at *4–5 (D. Colo. Dec. 6, 2022); *see also Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006). Under this standard, if an employee speaks "pursuant to [their] official duties," then the

speech is not constitutionally protected. *Timmins*, 2022 WL 17454551, at *4 (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007)).

Ms. Timmins identifies five categories of speech alleged in the Amended Complaint, three of which she contends were not made pursuant to her official duties:

1. Statements made to "members of the public" at public meetings;

2. Statements made to "members of the public" and outside of her employment about "Open Meetings Act" violations and other alleged illegal conduct; and

3. Statements made to reporters and members to the press "outside of public meetings" and Ms. Timmins' employment about the Directors' allegedly illegal conduct

(ECF No. 79 at 3-5). The Court addresses these categories of speech in turn, rejecting Ms. Timmins' contention that they were made outside the purview of her official duties.

**Speech at Public Meetings.** According to Ms. Timmins, statements she made at public meetings regarding "the Directors' corruption" were made "as a citizen," and not made pursuant to her official duties (ECF No. 79 at 4). The Court agrees with the District Defendants that it previously determined this speech did not satisfy *Garcetti*'s first step (ECF Nos. 88 at 2, 72 at 10-11). For the reasons set forth in the Court's December 6, 2022, Order, the Court concludes that these statements were made pursuant to Ms. Timmins' official duties as the District's legal counsel (*See* ECF No. 72 at 10-11). *See also Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010).

**Speech to Members of the Press & Outside Employment.** Regarding her remaining categories of speech, Ms. Timmins essentially argues that her alleged statements to members of the press and public were not made pursuant to her official duties because they were made "outside

6

of [her] work setting" and were meant to expose the Director Defendants' illegal activity (ECF No. 79 at 5-6). Ms. Timmins rests her argument on allegations added in her Amended Complaint regarding the statements she made to Mr. Woolsey, Mr. McKinley, and other Green Mountain residents (*see id.*; *see also* ECF No. 73 at 24 ¶¶ 73-74). The District Defendants contend that these allegations fail to satisfy *Garcetti*'s first step because they were made pursuant to her official duties (*see* ECF No. 74 at 7). The Court agrees with the District Defendants.

To be sure, an employee's communications with "newspapers or her legislators or performing some similar activity afforded citizens" are not ordinarily made pursuant to the employee's official duties. *Green v. Bd. of Cnty. Comm'rs*, 472 F.3d 794, 800 (10th Cir. 2007); *see also Rohrbough v. Univ. of Colorado Hosp. Auth.*, 596 F.3d 741, 747 (10th Cir. 2010) ("[S]peech directed at an individual or entity outside of an employee's chain of command is often outside of an employee's official duties."). Nonetheless, external statements made to members of the press and public are not "automatically entitled to [First Amendment] protection." *Omokehinde v. Detroit Bd. of Educ.*, 563 F. Supp. 2d 717, 726 (E.D. Mich. 2008) (emphasis omitted)); *see also Rohrbough*, 596 F.3d at 747 ("[A]n employee's decision to go outside of their ordinary chain of command does not necessarily insulate their speech."). In determining whether any communication is made pursuant to an employee's official duties, courts take a "broad view" in assessing the employee's speech, looking to the speech's content, its audience, and whether the speech "stemmed from" the type of work the employee was paid to do. *See Timmins*, 2022 WL 17454551, at *4–5; *see also Rohrbough*, 596 F.3d at 746–47 (stating there is not "a set of bright line rules to determine when an employee speaks pursuant to her official duties for the purposes of *Garcetti*/*Pickering*"); *Chavez-Rodriguez*, 596 F.3d at 713 ("[A] court take[s] a practical view

of all the facts and circumstances surrounding the speech and the employment relationship." (quotations omitted)).

Ms. Timmins alleges that she made several statements to members of the press and ordinary citizens about the Director Defendants' alleged illegal activity (ECF Nos. 79 at 5-6, 73 at 24-26 ¶¶ 73-74). She allegedly made these statements "outside of public meetings" and her work setting (*id.* at ¶ 73). However—and contrary to Ms. Timmins' argument—taking as true the allegation that Ms. Timmins made these statements outside of the Board's public meetings and her work setting, *see Mayfield*, 826 F.3d at 1255, this alone does not satisfy *Garcetti*'s first step (ECF No. 79 at 6). *See also Omokehinde*, 563 F. Supp. 2d at 726. Even though Ms. Timmins' statements were made to members of the press and public—individuals outside of her chain of command—the Court must also assess the content of her statements to determine whether she spoke pursuant to her official duties. *See Rohrbough*, 596 F.3d at 746–47; *see also Chavez-Rodriguez*, 596 F.3d at 713 (directing courts to take a "practical view of *all* the facts and circumstances surrounding the speech" (emphasis added) (quotations omitted)).

The Court agrees with the District Defendants that, looking to the content of Ms. Timmins' speech, she spoke pursuant to her official duties (ECF No. 74 at 7). In her conversations with Mr. Woolsey, Mr. McKinley, and the Green Mountain citizens, Ms. Timmins discussed the Board's alleged "open meetings act violations," how the Board "align[ed] . . . with an outside attorney who had a conflict of interest," violations of "[c]ourt orders in ongoing litigation," including a discovery order, and "[Mr.] Plotkin's and [Mr.] Baker's admission in their depositions" that they allegedly destroyed public records (ECF No. 73 at 24-26 ¶¶ 73-74). As the District Defendants argue, this speech stemmed from the work Ms. Timmins was paid to do as the District's legal counsel (ECF

No. 74 at 7). *See also Rohrbough*, 596 F.3d at 746; *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1329 (10th Cir. 2007) (concluding that raising concerns about the "legality" of an employer's operations are made pursuant to an employee's official duties if providing legal advice on the "lawful and proper way" to conduct business is "part of [the employee's] portfolio" (quotations omitted)).

For instance, Ms. Timmins' duties included "respond[ing] to requests for legal advice from" Board members, giving responses "in executive session meetings," preparing and filing pleadings, discovery responses, and "meet[ing] in executive session with Board members to discuss legal issues and strategy" (ECF No. 73 at 34 ¶ 34). Indeed, Ms. Timmins elsewhere alleges that she was advised in connection with the IGA Litigation that the plaintiffs developers there planned to file a "spoilation of evidence claim" due to Defendant Plotkin and Baker's alleged "serial destruction of public records," as well as that "during executive sessions" Ms. Timmins advised Defendants Plotkin, Morgan, and Baker that their communications with Defendant Henderson could harm the District in litigation, and that "the destruction of evidence in the IGA Litigation put the District at grave risk of . . . wasting District funds" (ECF No. 73 at 17 ¶¶ 55-56). Ms. Timmins further alleges that "in executive sessions" held during Board meetings, she advised the Board, "in particular [Defendants] Plotkin and Baker," that communications with Defendant Henderson and each other "outside of a public meeting, constituted a violation of the Colorado Open Meetings Act," and discussed Defendant Henderson's conflict of interest (*id.* at 13 ¶ 45). These allegations illustrate that the comments Ms. Timmins made to members of the press and public regarding the District Defendants' alleged misconduct were identical to those made pursuant to her official duties. *See Casey*, 473 F.3d at 1331 (holding that employee's speech was

"more akin to that of a senior executive acting pursuant to official duties than to that of an ordinary citizen speaking on his or her own time."); *see also De Ritis v. McGarrigle*, 861 F.3d 444, 453–54 (3d Cir. 2017) (observing that "often the attorney's statements are a proxy for the positions of both his clients and his employer" in concluding that statements were made pursuant to official duties and citing Model Rules of Professional Conduct); Colorado Rule of Professional Conduct Rule 1.8, cmt. 5 ("Use of information relating to the representation to the disadvantage of the client violates the lawyer's duty of loyalty.").

Reading the Amended Complaint's allegations in their entirety, *see Chilcoat*, 41 F.4th at 1207, these allegations demonstrate that Ms. Timmins' speech to Mr. Woolsey, Mr. McKinley, and the Green Mountain citizens stemmed from the work she was paid to do as the District's legal counsel—and the work she alleges she actually performed in that role. *See Rohrbough*, 596 F.3d at 746. Her comments about the District Defendants' Open Meetings Act violations and how the Board put "the District at grave financial risk by violating [c]ourt orders in ongoing litigation" involves and was related to the type of activities Ms. Timmins was paid to do as a legal professional representing the District and, based on other allegations in the Amended Complaint, ultimately performed. *Compare* ECF No. 73 at 24-26 ¶¶ 73-74, with *id.* at 17 ¶¶ 55-56. *See also Timmins*, 2022 WL 17454551, at *4 ("An employee's speech is made pursuant to their official duties where the alleged speech involves 'the type of activities that the employee was paid to do.'" (quoting *Chavez-Rodriguez*, 596 F.3d at 713)); *see also Brammer-Hoelter*, 492 F.3d at 1203 (determining that "cases interpreting *Garcetti* have made clear that speech *relating to tasks* within an employee's uncontested employment responsibilities is not protected from regulation" and collecting cases (emphasis added)). The Amended Complaint's allegations further demonstrate that Ms. Timmins'

10

speech was "related to alleged wrongdoing directly impacting" her ability to "carry out [her] official duties" as the District's legal counsel, underscoring that Ms. Timmins has failed to mount *Garcetti*'s first step. *Klaassen v. Atkinson*, 348 F. Supp. 3d 1106, 1170 (D. Kan. 2018) (quotations and alterations omitted); *see also id.* (concluding that plaintiff's statements to newspaper were made pursuant to official duties because the statements were related to wrongdoing "directly impacting" the ability to carry out plaintiff's official duties).

\* \* \*

Fundamentally, "[r]estricting speech that owes its *existence* to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen." *Garcetti*, 547 U.S. at 421–22 (emphasis added). And reading the Amended Complaint in its entirety, *see Chilcoat*, 41 F.4th at 1207, Ms. Timmins' speech to Mr. Woolsey, Mr. McKinley, and the Green Mountain citizens—although made outside her chain of command—was related to her official duties and owed its existence to them (ECF No. 73 at 24-26 ¶¶ 73-74). *See also Rohrbough*, 596 F.3d at 746; *Garcetti*, 547 U.S. at 421–22. Ms. Timmins, as the District's legal counsel, did not remove her attorney hat simply because she was speaking after hours to individuals outside her chain of command. She is therefore unlike other plaintiffs who were successfully able to remove themselves from their official duties so as to pursue a First Amendment claim. Accordingly—and for the reasons set forth in the Court's December 6, 2022, Order—Ms. Timmins' speech was made pursuant to her official duties. As such, she has failed to mount the "heavy barrier" of *Garcetti*'s first step. *Timmins*, 2022 WL 17454551, at \*6 (quotation omitted).

Because Ms. Timmins has failed to satisfy *Garcetti*'s first step, the Court need not address *Garcetti*'s remaining steps, or the District Defendant's argument that Defendants Plotkin, Baker, and Morgan are entitled to qualified immunity on Ms. Timmins' § 1983 First Amendment claims (ECF No. 74 at 15). *See also Timmins*, 2022 WL 17454551, at *6; *Brammer-Hoelter*, 492 F.3d at 1202 ("If the employee speaks pursuant to his official duties, then there is no constitutional protection . . . .") Moreover, the Court agrees with the District Defendants and Defendant Henderson that because Ms. Timmins has failed to meet her burden of showing that her speech is constitutionally protected, dismissal of her conspiracy claim is warranted (*See* ECF Nos. 74 at 15, 75 at 3). *See also Timmins*, 2022 WL 17454551, at *6; *Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1221 (10th Cir. 2017) ("[Plaintiff's] last claim, conspiracy to violate her First Amendment rights, *necessarily* requires [the plaintiff] to first show a deprivation of her First Amendment rights." (emphasis added)).[2]

### B. Defendant Henderson's Partial Motion to Dismiss

Defendant Henderson moves to dismiss Ms. Timmins' Amended Complaint on the same grounds as the District Defendants: that she has not satisfied *Garcetti* and fails to set forth a plausible conspiracy claim under § 1983 (*See* ECF No. 75 at 3-4). For the reasons set forth above in its discussion of the District Defendants' dismissal motion—and as discussed in its December

---

[2] Dismissal of Ms. Timmins' § 1983 claim against Green Mountain Water and Sanitation District is warranted for the same reasons set forth in the Court's December 6, 2022, Order: Ms. Timmins has failed to allege an underlying constitutional violation or plead that the sum of the Defendants' actions violated her constitutional rights. *See Timmins*, 2022 WL 17454551, at *6 n.4.

6, 2022, Order—the Court agrees with Mr. Henderson that dismissal of Ms. Timmins' § 1983 conspiracy claim is warranted. *See Timmins*, 2022 WL 17454551, at *7.[3]

## IV. CONCLUSION

Consistent with the above analysis, the District Defendants' Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 74) and Defendant Henderson's Renewed Partial Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 75) are GRANTED. Accordingly, Ms. Timmins' third, fourth, and fifth claims are DISMISSED WITH PREJUDICE.[4]

DATED this 7th day of March 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

---

[3] In its December 6, 2022, Order, the Court deferred ruling on Defendant Henderson's Special Motion to Dismiss after determining whether dismissal with prejudice of Ms. Timmins' claims against the District Defendants is warranted (*see, e.g.,* ECF Nos. 45 at 2, 72 at 15). A ruling on Defendant Henderson's Special Motion to Dismiss is forthcoming.

[4] The Court agrees with the District Defendants that Ms. Timmins' third, fourth, and fifth claims for relief—which are premised on the District Defendants' alleged violations of federal law—should be dismissed with prejudice (*see* ECF No. 74 at 2). Amendment of these claims would be futile. The Court previously granted Ms. Timmins leave to amend to cure the pleading deficiencies it identified in its December 6, 2022, Order, and her Amended Complaint has failed to do so (*see* ECF No. 72 at 14-15). Ms. Timmins' only amendments concerned her statements to members of the press and public which, for the reasons set forth above, fail to satisfy *Garcetti*'s first prong and are not entitled to First Amendment protection. Therefore, under Tenth Circuit law, dismissal with prejudice of Ms. Timmins' third, fourth, and fifth claims for relief is warranted. *See, e.g., Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190–91 (10th Cir. 2014) (stating that dismissal with prejudice is appropriate where a complaint fails to state claim under Rule 12(b)(6) and granting leave to amend would be futile).