IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:22-cv-00754-CNS-SBP

MARY JOANNE DEZIEL TIMMINS,

      Plaintiff,

v.

JOHN KIESS HENDERSON,

      Defendant.

---

## ORDER

---

Before the Court is Defendant Henderson's Second Renewed Special Motion to Dismiss Pursuant to C.R.S. § 13-20-1101. ECF No. 109. For the reasons set forth below, the Court GRANTS Defendant Henderson's Special Motion.

### I.  FACTUAL BACKGROUND

The Court already summarized the allegations in Plaintiff's Amended Complaint in several orders—*see* ECF Nos. 72, 89, and 90—and incorporates those summaries of her allegations here. Below, however, the Court recites her allegations relevant to its analysis of Defendant Henderson's Special Motion.

Based on Plaintiff's statements regarding their alleged misconduct, former Defendants Plotkin, Morgan, Baker, and current Defendant Henderson conspired to make disparaging and false statements about Plaintiff on Defendant Henderson's "published blog" called the "The Rooney Valley News." ECF No. 73 (Am. Compl.), ¶¶ 88–89. Defendant Henderson used this blog to "publish matters relating to the District's business

1

and legal affairs." *Id.*, ¶ 89. In a blog post dated April 7, 2021, Defendant Henderson published allegedly false statements that Plaintiff was operating against the District's interests, particularly that Plaintiff had "made the decision" to "sell a new [Intergovernmental Agreement for Extra-Territorial Sewer Service, or IGA] to Rooney Valley developers" and was working to "sell it to the other board members and the public." *Id.*, ¶ 90 (quotations omitted).

In an April 16, 2021 blog post, Defendant Henderson stated that Plaintiff was "representing one board member against the majority," again maligning her reputation. *Id.*, ¶¶ 92–93. In this same post, Defendant Henderson stated that Plaintiff was "overwhelmed" as the Green Mountain Water and Sanitation District's (the District) legal counsel and was not ready for trial. *Id.*, ¶¶ 95–97. Defendant Henderson's April 16, 2021 blog post was allegedly made "to confuse the directors by implying" that Plaintiff, as the District's legal counsel, "owed a duty to represent board members individually," rather than stating that "her actual duty" was to represent the District in litigation. *Id.*, ¶ 93. The alleged statements made in Defendant Henderson's April 16, 2021 blog post were "false," made to "disparage" Plaintiff's reputation, and intended to "undermine the public's and board's confidence in [her] legal ability" to serve as the District's legal counsel. *Id.*, ¶ 96.

In an April 30, 2021 blog post, Defendant Henderson made allegedly false statements that Plaintiff failed to "claim a jury trial in the Big Sky case" to disparage her reputation and undermine the public's and District's confidence in her legal abilities as the District's legal counsel. *Id.*, ¶ 101. In this same blog post, Defendant Henderson stated that Plaintiff "should be terminated" and withdrawn "from her representation of the [D]istrict in any litigation." *Id.*, ¶ 102. In a May 16, 2021 blog post, Defendant Henderson

made the allegedly false statement that Plaintiff had fired "counsel Gessler." *Id.*, ¶ 103 (quotations omitted). Defendant Henderson also stated in his blog post that Plaintiff was "unilaterally setting up and attending a meeting with the plaintiffs to discuss settlement," as well as that it was "time for new counsel." *Id.*, ¶¶ 105-06 (quotations omitted). In a June 26, 2021 blog post, Defendant Henderson made the allegedly false statements that Plaintiff had worked "overtime to push the majority directors to settle with the Big Sky developers and sign a new IGA," and that Plaintiff had made "multiple threats" against her own clients. *Id.*, ¶¶ 107–09 (quotations omitted).

In a July 3, 2021 blog post, Defendant Henderson made the allegedly false statement that Plaintiff's professional performance was a "constant issue" and that she fought to advance "Director Hanagan's position against the majority." *Id.*, ¶ 110 (quotations omitted). Defendant Henderson further stated in an August 5, 2021 blog post that Plaintiff "paid for her awards of recognition for her legal abilities," including an award regarding her "AV Preeminent rating." *Id.*, ¶ 111 (quotations omitted). In an August 7, 2021 blog post, Defendant Henderson made several allegedly false statements about Plaintiff, including that Gessler, not Plaintiff, had been "doing much of the work the past year," as well as that Plaintiff had made "false allegations" against Board members and that she "should be fired." *Id.*, ¶¶ 112–13 (quotations omitted).[1]

In an August 20, 2021 blog post, Defendant Henderson made the allegedly false statement that Gessler was handling "more of the case" than Plaintiff "during the past year." *Id.*, ¶ 115 (quotations omitted). In a September 17, 2021 blog post, Defendant

---

[1] Plaintiff alleges that Defendant Henderson's August 7, 2021 blog post was "seen and read on or about July 3, 2021, by members of the public including citizens and residents of the District." *Id.*, ¶ 112. It is not clear how members of the public could have seen the August blog post in July.

Henderson made additional allegedly false statements, including that Plaintiff missed a litigation filing deadline "for about $50,000 in costs," that she "failed to meet the deadline for filing a jury demand as to the main case," and that she failed to adequately represent the District. *Id.*, ¶¶ 116–17 (quotations omitted). Defendant Henderson stated in an October 3, 2021 blog post that Plaintiff engaged in "unethical and divisive manipulation" of the Board. *Id.*, ¶ 118 (quotations omitted). At the time Plaintiff filed her Amended Complaint, Defendant Henderson was "continu[ing] to make false and defamatory statements" about her. *Id.*, ¶ 119.

## II.  PROCEDURAL BACKGROUND

The Court also summarized this case's procedural history in previous orders. *See* ECF Nos. 72, 89, and 90. In its March 7, 2023 order, the Court granted the District Defendants' Motion to Dismiss Plaintiff's Amended Complaint and Defendant Henderson's Renewed Partial Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 89. Accordingly, the Court dismissed Plaintiff's federal-law claims—claims three, four, and five—with prejudice, leaving only Plaintiff's state-law claims—claims one and two— remaining against Defendant Henderson. *Id.* at 13. Three days later, the Court issued its order on Defendant Henderson's Special Motion to Dismiss Pursuant to C.R.S. § 13-20-1101. ECF No. 90.

In its March 10, 2023 order, the Court denied without prejudice Defendant Henderson's Special Motion after finding that Defendant Henderson mounted a factual challenge to each of Plaintiff's claims. ECF No. 90 at 6–8. The Court, therefore, deferred ruling on his factual challenges until the parties conducted discovery. *Id.* The parties have

completed discovery with respect to the instant motion, which is now fully briefed. ECF Nos. 109, 161, and 121.

### III. LEGAL STANDARD & APPLICABILITY OF COLO. REV. STAT. § 13-20-1101

Colorado enacted its anti-SLAPP law, Colo. Rev. Stat. § 13-20-1101, in 2019. This law is intended to discourage plaintiffs from filing strategic lawsuits against public participation (SLAPP). *Salazar v. Pub. Trust Inst.*, 522 P.3d 242, 245, 245 n.1 (Colo. App. 2022). "The statute's purpose is 'to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury.'" *Id.* at 246 (quoting Colo. Rev. Stat. § 13-20-1101(1)(b)). To balance these competing interests, § 13-20-1101 provides a "special motion to dismiss" to quickly weed out frivolous suits intended to chill speech about matters of public concern. *Id.* at 246–47 (quoting Colo. Rev. Stat. § 13-20-1101(3)(a)). The statute reads in relevant part as follows:

> (3)(a) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States constitution or the state constitution in connection with a public issue is subject to a special motion to dismiss unless the court determines that the plaintiff has established that there is a reasonable likelihood that the plaintiff will prevail on the claim.
>
> (b) In making its determination, the court shall consider the pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

§ 13-20-1101(3)(a)–(b). A defendant who prevails on a special motion to dismiss may be entitled to recover attorney fees and costs. § 13-20-1101(4)(a).

As a threshold matter, this Court has found that "Colorado's anti-SLAPP law is applicable in federal court." *Moreau v. United States Olympic & Paralympic Comm.*, 641 F. Supp. 3d 1122, 1133 (D. Colo. 2022); *Coomer v. Make Your Life Epic LLC*, 659 F. Supp. 3d 1189, 1199 (D. Colo. 2023) (agreeing with the *Moreau* analysis), *appeal docketed*, No. 23-1109 (10th Cir. Apr. 7, 2023). The parties do not appear to dispute the applicability of Colorado's anti-SLAPP law in their instant briefings.

As the Court explained in its March 10, 2023 order, Colorado's anti-SLAPP statute creates a two-step framework. ECF No. 90 at 6. The Court must first consider "whether the motion and supporting affidavit establish a prima facie case that the plaintiff's cause of action falls within the anti-SLAPP statute—that is, whether the claim arises from an act 'in furtherance of the [defendant's] right of petition or free speech . . . in connection with a public issue.'" *Salazar*, 522 P.3d at 248 (quoting Colo. Rev. Stat. § 13-20-1101(3)(a)). If so, the Court proceeds to the second step, where the Court must "consider the pleadings and the supporting and opposing affidavits to determine whether the nonmoving party (the plaintiff) has established a reasonable likelihood of success on his claim." *Id.*

As the Court explained in *Moreau*, "[i]f the anti-SLAPP motion mounts a factual challenge, courts assess the motion under Federal Rule of Civil Procedure 56." *Moreau*, 641 F. Supp. 3d at 1133 (citing *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018)).[2]

---

[2] Because Colorado's anti-SLAPP statute "tracks California's [anti-SLAPP] statute almost exactly," state and federal courts have turned to California courts' interpretation of California's statute in construing and applying Colorado's anti-SLAPP statute. *Moreau*, 641 F. Supp. 3d at 1128 (citing *L.S.S. v. S.A.P.*, 523 P.3d 1280, 1285 (Colo. App. 2023) ("[W]e look to California case law for guidance in outlining the two-step process for considering a special motion to dismiss.").

## IV.  ANALYSIS

The Court has considered Defendant Henderson's Special Motion, the related briefing, Plaintiff's Amended Complaint, and relevant legal authority. The Court addresses Defendant Henderson's challenges to Plaintiff's remaining state-law claims in turn.

### A.  The Defamation Claim

In his Special Motion, Defendant Henderson mounts a factual challenge to Plaintiff's first claim for "Defamation – Libel and Slander Per Se." ECF No. 109 at 20. Defendant Henderson first argues that his statements fall within the scope of the anti-SLAPP statute because the Rooney Velley News is a public forum that is open to the public, and each challenged statement concerned an issue of public interest. *Id.* at 13–20. Plaintiff does not dispute that Defendant Henderson's statements fall within the purview of the statute and therefore concedes this point. *See Pertile v. Gen. Motors, LLC*, No. 15-CV-0518-WJM-NYW, 2017 WL 4237870, at *6 (D. Colo. Sept. 22, 2017) (citing *Phillips v. Calhoun*, 956 F.2d 949, 953–54 (10th Cir. 1992)). Instead, Plaintiff jumps to step two and disputes Defendant Henderson's arguments that she cannot establish a reasonable likelihood of prevailing on her defamation claim. ECF No. 116 at 8–25.

Under "Colorado law, a defamation plaintiff must prove that a statement involving a matter of public concern was: (1) defamatory, (2) materially false, (3) concerned the plaintiff, (4) published to a third party, (5) published with actual malice, and (6) caused actual or special damages." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1109 (10th Cir. 2017) (cleaned up) (further explaining that, when the "public concern" heightened burden applies, the plaintiff is required to prove the publication's falsity by clear and convincing evidence (citing *Fry v. Lee*, 408 P.3d 843, 848 (Colo. App.

2013))). The parties agree that this standard governs Plaintiff's defamation claim. *See* ECF No. 109 at 21; ECF No. 116 at 8 (conceding that, when a "statement concerns a matter of public concern in the anti-SLA[P]P context, a Plaintiff must establish a probability they will be able to produce clear and convincing evidence of actual malice at trial"). In addition to agreeing that the first step of the two-step framework is satisfied, the parties agree that only the second (materially false) and fifth (actual malice) elements of a claim for defamation are at issue here. The Court addresses these elements in turn.

### i.   Material Falsehood

Where, as here, the allegedly defamatory statements relate to a matter of public concern, Plaintiff must show the statements' falsity by clear and convincing evidence. *Fry*, 408 P.3d at 848. Clear and convincing evidence is "evidence that is highly probable and free from serious or substantial doubt." *L.S.S. v. S.A.P.*, 523 P.3d 1280, 1288 (Colo. App. 2023) (citations omitted).

In his Special Motion, Defendant Henderson argues that his statements either were substantially true or were mere opinions such that Plaintiff cannot prove the statements' falsity. ECF No. 109 at 23–25. Plaintiff, at great length but with little to no evidence, argues that Defendant's statements were false. ECF No. 116 at 9–18. The Court is not moved by Plaintiff's arguments. *See Coomer*, 659 F. Supp. 3d at 1200 ("At step two, Plaintiff must go beyond his pleadings and present evidence that satisfies the Court that he is reasonably likely to prevail on the merits of his claims." (citing *L.S.S.*, 523 P.3d at 1285–86)).

It is clear to the Court that many of Defendant Henderson's statements are mere opinions or hyperbole such that Plaintiff cannot prove the statements' falsity. The most

obvious example is Defendant Henderson's April 16, 2021 blog post where he writes that "counsel Timmins by her own admission is overwhelmed" and "isn't ready for trial." Am. Compl., ¶ 95. Despite her burden, Plaintiff merely argues or opines that she was not "overwhelmed." ECF No. 116 at 17. (This, of course, assumes that she could provide evidence to contradict Defendant Henderson's opinion that she was overwhelmed and not ready for trial.) Defendant Henderson, for his part, actually provides record evidence to show how he formed his opinion that Plaintiff was overwhelmed. *See* ECF No. 121 at 13 n.9 (citing two Board meetings where Plaintiff told Director Morgan she did not have time to answer the Director's questions and that "there's only so much a person can do"). There is simply no way for Plaintiff to prove the falsity of this statement at trial. *Keohane v. Stewart*, 882 P.2d 1293, 1299 (Colo. 1994) (statements that are not "susceptible to being proved true or false" are not actionable (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990))).

Another example is Defendant Henderson's statement that Plaintiff revealed privileged communications to the public at a Board meeting. Am. Compl., ¶ 110. Plaintiff points to several statements[3] and argues that none of the alleged statements are "privileged communications." ECF No. 116 at 14. But whether the communications publicly disclosed by Plaintiff are privileged is, at best, debatable. Even so, Plaintiff provides nothing but attorney argument to show the falsity of these statements whereas Defendant Henderson provides competent evidence to support the truthfulness of his statements. *Compare* ECF No. 116 at 14, *with* ECF No. 121 at 9–11 (citing Henderson

---

[3] *See, e.g.,* Am. Compl., ¶¶ 54, 69, 79, 147 (alleging in the Amended Complaint that Plaintiff made public statements concerning whether certain Directors "destroyed evidence in the case in violation of the rules of civil procedure").

Aff., ¶ 107). Thus, Plaintiff again has failed to establish a reasonable likelihood that she will prevail on this claim.

A final example (there is more, but they all fold into this same vein) is Defendant Henderson's statements that "Timmins had made the decision to sell a new IGA to Rooney Valley Developers." ECF No. 116 at 15. Citing her Amended Complaint, Plaintiff claims this statement is false and made with the improper intention of causing members of the public and the Board to lose confidence in her because she supposedly drafted a new IGA behind their backs and was working to help the developers (the opposing parties) in the Big Sky Litigation. *Id.* at 16 (citing Am. Compl., ¶¶ 90–91). To start, the Court agrees with Defendant Henderson that Plaintiff misquotes the April 7, 2021 blog post, which reads:

> The meeting quickly devolved into a discussion of the merits of inclusion. Director Hanagan and Board counsel Timmons have made their decision (although counsel does not have a vote). A new IGA with the Rooney Valley developers. They are working very hard to sell it to the other board members and the public.

ECF No. 109-4 at 2.

The blog post does not state that Plaintiff, alone, made the decision to "sell" a new IGA to the Board or the public. It states that Director Hanagan, in conjunction with Plaintiff (a nonvoting member), made the decision. Nor did it state that Plaintiff drafted a new IGA behind the Board's back or that Plaintiff somehow was working with the opposing parties. Plaintiff's only purported evidence to support her argument is Defendant Henderson's response to a request for production of documents. There, Plaintiff asked Defendant Henderson to produce a copy of "the new IGA" he claimed Plaintiff attempted "to sell to the developers." ECF No. 116 at 16. Defendant Henderson stated that "he was not

referring to a document that was in existence at the time," and that he was "not aware of whether any draft IGAs were suggested or circulated." *Id.* (citing ECF No. 116-1 (Timmins Aff.), ¶ 22). Plaintiff contends that these facts establish a prima facie case as to the falsity of this statement. *Id.* The Court disagrees.

Whether Plaintiff attempted to sell (i.e., to "persuade or influence [] a course of action or to the acceptance of something"[4]) a new IGA is unlikely to be susceptible of being proved false. Still, Defendant Henderson—not Plaintiff—offers competent evidence that the "gist" of the statement is true. ECF No. 121 at 13 (citing Henderson Aff., ¶¶ 35–45); *Fry*, 408 P.3d at 848. He states that his comment was based on several public meetings, referencing specific timestamps where Plaintiff and Director Hanagan tried to persuade the Board and public that a new IGA was the best option. *Id.* (citing Henderson Aff., ¶¶ 35-45).

Having reviewed the pleadings and supporting and opposing affidavits as required by § 13-20-1101(3)(b), the Court finds that there is not a reasonable likelihood that Plaintiff will prevail on her defamation claim.[5]

     *ii.*    *Actual Malice*

Even assuming Plaintiff can satisfy the material falsehood element as to any statement, she still must establish actual malice by clear and convincing evidence to

---

[4] *Sell*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/sell (last visited Mar. 19, 2024); *see also* Henderson Aff., ¶ 37 ("I did not use 'sell' in the literal sense of the word (i.e., exchanging something for currency). Rather, I used the word 'sell' as a synonym of 'persuade,' as is common in informal speech, and as is obvious from the context of the statement.").

[5] The Court has reviewed in detail Plaintiff's remaining allegedly defamatory statements and Defendant Henderson's reply with respect to those statements. *See* ECF No. 116 at 8–17; ECF No. 121 at 4–13. Although the Court does not address each statement in this order, the Court nonetheless finds that Plaintiff has not established that there is a reasonable likelihood that she can prove the falsity or the materiality of those statements.

prevail on her defamation claim. *L.S.S.*, 523 P.3d at 1288. "A statement is published with actual malice if it is published with actual knowledge that it was false or with reckless disregard for whether it was true." *Id.* (citation omitted). "A plaintiff can establish actual malice if the defendant 'entertained serious doubts as to the truth of the statement or acted with a high degree of awareness of its probable falsity.'" *Id.* (quoting *Fry*, 408 P.3d at 848). A plaintiff's "failure to pursue the most obvious available sources of possible corroboration or refutation may clearly and convincingly evidence a reckless disregard for the truth." *Kuhn v. Trib.-Republican Pub. Co.*, 637 P.2d 315, 319 (Colo. 1981). However, "ill will and bad motive toward the plaintiff" is insufficient to establish actual malice. *Fink v. Combined Commc'ns Corp.*, 679 P.2d 1108, 1111 (Colo. App. 1984).

In his 45-page affidavit in support of his Special Motion, Defendant Henderson—in painstaking detail—explains the factual bases for his allegedly defamatory statements, including timestamps from recordings of public Board meetings, and why the recordings and other documents support the truthfulness of his statements. *See, e.g.*, Henderson Aff., ¶ 31.

For her part, Plaintiff primarily argues that Defendant Henderson failed to investigate the most obvious sources of corroboration. ECF No. 116 at 19. For example, Plaintiff alleges that statements about Gessler's "firing" were false and that Defendant Henderson should have corroborated the truthfulness of this statement with Gessler himself.[6] ECF No. 116 at 20. She also argues that Defendant Henderson's sole source of information, Director Morgan, is a "biased and unreliable source, who he coached to

---

[6] To be precise, Plaintiff argues in her response that "Henderson stated that Timmins 'recklessly fired Gessler.' Amend. Comp. ¶ 103." ECF No. 116 at 20. There are two things wrong with this statement. First, Plaintiff misquotes her own Amended Complaint. Second, and more importantly, despite Plaintiff's statement to the contrary, the May 16, 2021 blog post does not state that Plaintiff "recklessly fired Gessler."

make false statements about Timmins, [and] is evidence of his malice." *Id.* Plaintiff provides no support whatsoever for this bold assertion; she does not even mention Director Morgan in her self-serving affidavit. *See id.*; *see also* Timmins Aff. The Court, therefore, disregards these baseless arguments. Even so, the evidence does not support Plaintiff's position.

Defendant Henderson's May 16, 2021 blog post discusses Gessler's departure from the legal team. The relevant portion of the post reads as follows:

> At 1:54:39 Director Karen Morgan addressed the departure of co-counsel Scott Gessler. The following discussion between Counsel Timmons and Director Morgan **revealed that Counsel Timmons asked for Scott Gessler's resignation – it was her decision; not Mr. Gessler's.**
>
> The discussion begins about 2:02:00 where Director Morgan is thanking Mr. Gessler for his help and expresses concern that his resignation **was "requested" by Counsel Timmons without permission of the Board – the client.**
>
> During the course of the discussion, Counsel Timmons **falsely** accused Director Morgan of making a false statement to the public (2:03:10). **Then the statements in a letter and a conversation revealed that, in fact, Counsel Timmons, not Mr. Gessler and not the Board, "asked" Mr. Gessler for his resignation.**
>
> **Through the following 5 minutes (from 2:03:10 to 2:08:52), Director Morgan, fighting interruptions from Counsel Timmons and Director Hanagan, simply tried to make the obvious point that the Board, not Counsel Timmons, is responsible for making the hiring and firing decisions about who is going to be legal counsel for the Board.**

Henderson Aff., ¶ 83 (quoting May 16, 2021 blog post at ECF No. 109-35 at 4) (emphasis in original). Whether asking Gessler to resign or withdraw amounted to his "firing" is generally not something Plaintiff can prove is false. The competent evidence submitted

by Defendant Henderson shows that Gessler's letter to Plaintiff stated, "since you have asked me to withdraw, I have done so." Henderson Aff., ¶ 84(d). Even though Plaintiff now alleges that the decision was mutual, Director Morgan explained that Gessler told her it was not a "mutual decision." *Id.* Plaintiff has failed to carry her burden.[7]

For much of the same reasons, Plaintiff's remaining arguments purporting to show actual malice fail. As to any statement, she has simply failed to show that Defendant Henderson acted with malice. As such, the Court finds that Plaintiff has failed to establish that there is a reasonable likelihood that she will prevail on her defamation claim.

### B. The Intentional Interference Claim

Defendant Henderson also mounts factual challenges to Plaintiff's claim of "Intentional Interference with Contract." To prevail on this tort claim, Plaintiff must show

> (1) [the] existence of a contractual relationship between the plaintiff and a third party; (2) the defendant knew or reasonably should have known of the contract; (3) the defendant intentionally and improperly interfered with that contract; (4) defendant's conduct caused the breach or non-performance of the contract by the third party; and (5) plaintiff suffered damages as a result.

*Mueller v. Swift*, No. 15-CV-1974-WJM-KLM, 2017 WL 2362137, at *6–7 (D. Colo. May 31, 2017); *see also Colorado Nat. Bank of Denver v. Friedman*, 846 P.2d 159, 170 (Colo. 1993). Defendant Henderson's arguments are directed only to the third and fourth elements, which the Court addresses in turn.

---

[7] The Court also finds this fact immaterial. Plaintiff does not explain in her response how she was harmed by the characterization of Gessler's departure. *See* ECF No. 116 at 14–15, 20. The situation may be different had Gessler challenged the characterization of his departure, but that is not the situation before the Court. *See Bustos v. A & E Television Networks*, 646 F.3d 762, 764 (10th Cir. 2011) ("Under Colorado law, much as elsewhere, it is not enough for the plaintiff to show that the defendant got some innocuous detail wrong; the plaintiff must show that the challenged defamatory statement is not just false but material.").

### i.   Improper Conduct

To determine whether Defendant Henderson's conduct was improper, the Court must weigh the following factors enumerated in Restatement (Second) of Torts §767, including (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of the action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties. *Westfield Dev. Co. v. Rifle Inv. Assocs.*, 786 P. 2d 1112, 1117–18 (Colo. 1990).

Here, Defendant Henderson argues that his conduct—drafting and posting blogs in matters of public concern—is protected speech and thus not improper. ECF No. 109 at 26. In response, Plaintiff concedes that "a statement of opinion relating to matters of public concern which does not contain a provably false factual connotation will receive constitutional protection." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 852 (10th Cir. 1999). However, Plaintiff argues that Defendant Henderson's statements are "provably false," and therefore, he cannot receive constitutional protection. ECF No. 116 at 27.

In cursory fashion, Plaintiff addresses factor one—the nature of the actor's conduct. *Id.* at 28. But (again) she provides no evidence to support her argument that Defendant Henderson's conduct was improper. *Id.* ("Considering the first factor, the nature of Henderson's conduct was improper. A defendant who makes false accusations, based on a grossly inadequate investigation, thereby committing acts of slander and

defamation, supports the conclusion such actions were improper. *Mueller v. Swift, supra,* *26-27.*").[8]

Plaintiff's arguments are unpersuasive. For support, Plaintiff selects four statements by Defendant Henderson to show his purported improper conduct. *See* ECF No. 116 at 26 (citing Am. Compl. ¶¶ 102, 113).

- "In the Rooney Valley News blog dated April 30, 2021, Henderson stated that *Timmins should be terminated* and be required to immediately withdraw from her representation of the district in any litigation." Am. Compl. ¶ 102 (emphasis added).

- "Henderson stated that Timmins should be terminated because she '*is doing more harm than good to the district.*'" *Id.* (purporting to quote the April 30, 2021 blog post) (emphasis added).

- In the Rooney Valley News blog dated May 16, 2021, Henderson stated "*it is time for new counsel.*" *Id.*, ¶ 106 (emphasis added).

- "Henderson devoted [the August 7, 2021] blog to his view that [Plaintiff] 'violated ethical rules' and that her 'law license should be suspended or revoked.'" *Id.*, ¶ 113.

It is plain to the Court that the first three statements are opinions. Whether a general counsel for a public entity "should be terminated" is a matter of opinion. It is simply impossible to prove that this statement is false. Thus, it is not actionable. *See Moody's*, 175 F.3d at 852. The same is true for the next two statements: whether a general counsel for a public entity is doing "more harm than good," and whether it is "time for new counsel," is a matter of opinion. Of the four statements Plaintiff provides for support, only the fourth

---

[8] Plaintiff likewise addresses factors two, four, and five in cursory fashion. ECF No. 116 at 28–29. The Court will not address these because Plaintiff provides almost no argument and no evidence to support her arguments. *See, e.g.*, *id.* at 29 ("As to the fourth factor, Henderson acted with the improper intent to harm Timmins' reputation and get her removed from her position so that he could proceed with his illegal agenda unimpeded. *SGS, supra,* *11."); *id.* ("As to the fifth factor, society has an interest in ensuring that outsiders who deal with public entities act in good faith. *SGS, supra,* *11.").

goes beyond the realm of an opinion. This fourth statement, however, will not save Plaintiff's claim.

First, the Court has reviewed the August 7, 2021 blog post attached as evidence in the briefings. *See* ECF No. 109-25. Nowhere in the blog post does he state that Plaintiff "violated ethical rules" or that her "law license should be suspended or revoked." Setting aside Plaintiff's liberal use of quotations in her Amended Complaint (and in her response brief), which makes the Court seriously question the veracity of her statements, Plaintiff has failed to show that any statement in that blog post was improper or actionable. *Moody's*, 175 F.3d at 857–58 (holding that claims based on constitutionally protected speech are insufficient to establish improper conduct).

To the extent Plaintiff relies on other allegedly defamatory statements to support her intentional interference claim, the Court finds those equally unavailing for the reasons cited above.

### ii.   *Whether Defendant's Conduct Caused the Breach*

Defendant Henderson argues that his blog posts did not cause the District to terminate its contract with Plaintiff. Citing numerous documents and recordings, he argues that Plaintiff and the Board had a contentious relationship and often argued about Plaintiff's performance, the IGA litigation, and internal disagreements. ECF No. 109 at 27–28.

Plaintiff argues in response that the issue of causation should be left to the jury. ECF No. 116 at 29. With very little evidence, she disputes Defendant Henderson's arguments that that she and the Board had a contentious relationship. She cites one paragraph from her affidavit where she states that Director Plotkin told Plaintiff on the

phone that she was doing a "good job" handling the litigation. Timmins Aff., ¶ 25 ("I spent dozens of hours on the telephone in private phone calls with Alex Plotkin . . . . Many times during those phone calls Plotkin told me I was doing a 'good job' and I was handling the litigation very well."). This is not enough to establish a reasonable likelihood that she can prove Defendant Henderson caused her termination.

Contrary to Plaintiff's thin evidence, Defendant Henderson provides competent evidence suggesting that Plaintiff yelled at, belittled, argued with, and threatened her clients. *See* ECF No. 121 at 16 n.12–n.15. And more damaging to Plaintiff's argument is Director Plotkin's affidavit, which is critical of Plaintiff's representation and her relationship with the Board. ECF No. 109-41 (Plotkin Aff.), ¶¶ 8–12, 27–29, 31. Indeed, Plotkin states that the Board terminated Plaintiff because, among other things, "she worked against the Board to push a new IGA, attempted to suppress and intimidate three of the Directors, and essentially commandeered Board meetings." *Id.*, ¶ 31; *see also* ECF No. 109-36 (Morgan Aff.), ¶¶ 8–14, 24–27, 32–40 ("Ms. Timmins was terminated as the District's counsel due to her own actions, including inappropriate behavior, lack of diligence, unprofessionalism, and interference with District business."). The overwhelming evidence before the Court is that Defendant Henderson did not cause Plaintiff's termination.

The Court also notes that Plaintiff's own allegations state that the reason the Board (a party to the contract) terminated her was to "retaliate against her for her exposure to the public of their corruption." Am. Compl., ¶ 123. This alone would likely warrant dismissal of Plaintiff's intentional interference claim. *See Friedman*, 846 P.2d at 170 ("The tortious conduct occurs *when the defendant, not a party to the contract*, induces the third

party to breach the contract, or interferes with the third party's performance of the contract." (emphasis added)).

Plaintiff's arguments fall far short of establishing a reasonable likelihood that she will prevail on her intentional interference claim.

## V.  CONCLUSION

Consistent with the above analysis, Defendant Henderson's Second Renewed Special Motion to Dismiss Pursuant to C.R.S. § 13–20–1101, ECF No. 109, is GRANTED. Accordingly, Plaintiff's claims are DISMISSED WITH PREJUDICE. The Court directs the Clerk of Court to close this case.

DATED this 21st day of March 2024.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge